UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CATO F. HUSTUS, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:16-cv-00564-GZS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|     *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a meat processor. The plaintiff seeks remand on the bases that the ALJ erred in finding no severe physical impairment and making a flawed determination of his mental residual functional capacity ("RFC"), predicated in part on an erroneous credibility finding. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 12) at 10-18. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, Finding 1, Record at 11; that he had severe impairments of attention deficit hyperactivity disorder and mood disorder, Finding 3, *id.*; that he had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he could perform simple, routine tasks with normal work breaks over a normal workday and could have no interaction with the general public, Finding 5, *id.* at 14; that he was capable of performing past relevant work as a meat processor, Finding 6, *id.* at 17; and that he, therefore, had not been disabled from August 1, 2006, his alleged onset date of disability, through the date of the decision, December 29, 2015, Finding 7, *id.* at 18. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R.

§§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Finding of No Severe Physical Impairment

The plaintiff first argues that the ALJ erred in failing to find any of his physical impairments severe at Step 2. *See* Statement of Errors at 10-12. He focuses on the lack of any severe finding of diverticulitis but also argues, in passing, that his back, knee, and hip impairments, although admittedly not in themselves disabling, should also have been found severe. *See id.* I find no error.

#### 1. Diverticulitis

The ALJ found that "[t]he medical record show[ed] evidence of diverticulitis[,]" noting that the plaintiff had undergone a colostomy in March 2015 and a colostomy reversal in May 2015, at which time he had a normal colonoscopy. Record at 11. She noted, "Although there is evidence of diarrhea, doctors simply encouraged the [plaintiff] to 'eat more vegetables regularly and use

yogurt to help re-establish normal bowel flora.'" *Id*. (quoting *id*. at 557) (corrections by ALJ) (progress note dated October 1, 2015).

The ALJ determined that, although the plaintiff had alleged an inability to engage in substantial gainful activity due to his diverticulitis and colostomy as well as joint dysfunction, "he ha[d] failed to submit persuasive medical records relative to these impairments." *Id*. She explained:

> The regulations at 20 C.F.R. §§ 404.1528 and 416.928 provide that a statement of symptoms alone is not sufficient to establish that there is a physical or mental impairment. The statement of symptoms must be accompanied by signs and laboratory findings. Although the [plaintiff] has made statements regarding these conditions, the record does not contain medical information with evidence of signs or laboratory studies establishing a medically determinable impairment that would have interfered with his ability to perform basic work activities at any time.

*Id*.

The ALJ also gave great weight to a July 7, 2014, opinion of agency examining consultant Robert Charkowick, D.O., that the plaintiff had "'no restrictions to do work-related activities such as sitting, standing, walking, lifting, carrying, bending, handling objects, hearing, speaking, or traveling.'" *Id*. at 12 (quoting *id*. at 512).

She concluded that the plaintiff's physical impairments were not only unsupported by signs, symptoms, or laboratory findings but also failed to meet the commissioner's duration requirement and had not been shown to significantly limit the plaintiff's ability to perform basic work activities. *See id*.

The plaintiff contends that, in deeming his diverticulitis nonsevere, the ALJ ignored more recent evidence, in the form of a November 10, 2015, progress note and his testimony at his November 30, 2015, hearing, indicating that the dietary changes he had been instructed to make had not helped to alleviate his continuing abdominal pain and digestive issues, "and that the assessment of his continued problems remained inconclusive." Statement of Errors at 10; *see also*

Record at 50-52, 554-56.  He adds that any reliance on Dr. Charkowick's opinion was misplaced because his diverticulitis postdated Dr. Charkowick's examination, which, in any event, was too cursory to stand as substantial evidence that he had no severe physical impairment.  *See* Statement of Errors at 11.

At oral argument, counsel for the commissioner conceded that the ALJ could not rely on the Charkowick opinion for the proposition that the plaintiff's diverticulitis was nonsevere because the opinion predated the plaintiff's development of that condition.  However, she contended that the plaintiff had failed to establish that any ongoing difficulties caused work-related functional limitations or met the so-called duration requirement or, assuming error, that it was harmful.  *See also* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 5-6; 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months.  We call this the duration requirement.").

The plaintiff's counsel rejoined that, while there was no evidence of specific functional limitations, there was sufficient evidence in the form of the plaintiff's hearing testimony and the November 10, 2015, progress note that his condition was severe – that is, still causing problems for which no effective treatment had then been found.

The commissioner has the better argument.  On this record, the ALJ reasonably concluded that the plaintiff had failed to prove that his diverticulitis impairment imposed work-related limitations or had lasted, or was expected to last, the requisite 12 months.

The plaintiff developed gastrointestinal issues/diverticulitis in February 2015.  *See* Record at 50-52.  As of the date of his hearing, November 30, 2015, he was still undergoing diagnostic testing to determine why he continued to suffer from diarrhea following the reversal of his

colostomy in May 2015. *See id*. at 50-51, 554-56. He was noted to have reported on November 10, 2015, that he had five to eight loose stools a day and occasional abdominal pain. *See id*. at 554. He also testified at hearing that he "sometimes" needed to be close to a restroom because his digestive system remained unpredictable. *Id.* at 51. However, it is not clear what work-related restrictions, if any, these symptoms imposed, and whether his impairment was expected to last for a continuous period of at least 12 months.

In any event, as the commissioner argues, *see* Opposition at 5, even assuming error, the plaintiff offers nothing but vague speculation that his "need for frequent bathroom breaks due to diverticulitis might reasonably have been expected to preclude his ability to perform his past relevant work or other work in the national economy[,]" Statement of Errors at 11. Remand is unwarranted in these circumstances. *See, e.g., Courtney v. Colvin*, Civil No. 2:13-cv-72-DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014) ("[T]he plaintiff fails to identify the specific limitations imposed by these impairments, whether or not severe, that would have necessarily affected the outcome of her application for benefits, a basic requirement at this level of review.").

## 2. Hip, Back, and Knee Pain

The ALJ acknowledged that the plaintiff had complained of hip and back pain in 2014 but observed:

> Radiographic imaging of bilateral hips showed *mild* degenerative joint disease. Imaging of the lumbar spine was essentially normal. Physical examination revealed issues of deconditioning, with pulling hamstring with straight leg raise, pain in hips, slow tandem gait, some limitation in range of motion, and diffuse tenderness. The [plaintiff's] primary care physician encouraged him to walk every day to promote better posture and "help his mental issues to slowly increase activity." In fact, rather than place any physical limitations on the [plaintiff], his doctor encouraged [him] to get his license back "so he has a hope of finding work."

Record at 11 (quoting *id*. at 572) (corrections by ALJ) (citations omitted) (emphasis in original).

In addition, as noted above, the ALJ gave great weight to Charkowick opinion, explaining that, although Dr. Charkowick was not a treating source, he had examined and observed the plaintiff, giving him "insight into the extent of [the plaintiff's] impairments and ability to function." *Id*. at 12 (citation omitted).

Dr. Charkowick described his findings on examination of the plaintiff as "unremarkable," noting, in relevant part:

> [H]e has a normal gait. He moves quickly and freely. He appeared in no pain or discomfort. He squatted in and out of my office chair without difficulty. . . . Both hips show full painless range of motion. Lumbar range of motion is full and painless. . . . [N]o swelling of the knees is noted. No palpatory tenderness of the knees.

*Id.* at 512. He concluded that the plaintiff could "be gainfully employed" and had "no restrictions to do work-related activities[.]" *Id*.

The plaintiff concedes that records regarding his back, knee, and hip conditions are inadequate "to establish disability in and of themselves"; however, he argues that they "are adequate to establish the presence of additional physical impairments that have more than a minimal impact" on his ability to work. Statement of Errors at 11.

He contends that the ALJ erred in relying heavily on the Charkowick opinion to find these conditions nonsevere when, as he stated in an affidavit submitted in support of his reconsideration appeal, Dr. Charkowick spent only approximately six minutes examining him. *See id*.; Record at 270 (plaintiff's affidavit dated September 18, 2014). He adds that Dr. Charkowick appears not to have reviewed any of his medical records, based on his "cursory written review" of the plaintiff's history. Statement of Errors at 11; Record at 511.

Finally, he argues that the asserted error in failing to find severe back, knee, and hip impairments is not harmless because "[e]ven modest exertional limitations based upon additional

7

severe physical impairments might reasonably have been expected to eliminate the possibility that [he] could perform [his] past work [as a meat processor] at either the medium or heavy exertional level." Statement of Errors at 12.

As the commissioner counters, *see* Opposition at 4, the alleged brevity of Dr. Charkowick's examination does not render it unreliable, particularly when, as her counsel noted at oral argument, Dr. Charkowick certified that his report was accurate, *see* Record at 513. In any event, while the plaintiff cites portions of the record in support of the proposition that his back, knee, and hip conditions were severe, he fails to explain how they demonstrate that the ALJ erred in finding otherwise. *See* Statement of Errors at 11 (citing Record at 311-12, 315-17, 330, 411-22, 433-39, 440-41, 501-02, 567-72).[2]

Finally, even assuming error, the plaintiff fails to demonstrate that any error was harmful, again relying solely on speculation that a finding of even modest exertional limitations based on additional severe impairments "might reasonably have been expected to eliminate" his past relevant work as a meat processer. *Id*. at 12.

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Mental RFC Assessment

The plaintiff next challenges the ALJ's mental RFC assessment on the grounds that it is not clearly supported by expert opinion evidence, does not reflect her findings of moderate limitations, is in part the product of a misreading of Global Assessment of Functioning ("GAF")

---

[2] As the commissioner further notes, *see* Opposition at 4, even if Dr. Charkowick did not review the plaintiff's medical records, two agency nonexamining consultants did. Following review of the then-available records, including Dr. Charkowick's report, both concluded that the plaintiff had no severe physical impairment. *See* Record at 94-95 (July 22, 2014, opinion of Donald Trumbull, M.D.), 118-19 (December 26, 2014, opinion of J.H. Hall, M.D.).

scores,[3] and is in part predicated on a flawed credibility analysis. *See* Statement of Errors at 12-18. I find no reversible error.

### 1. Asserted Reliance on Raw Medical Evidence

The plaintiff cites *Bernier v. Colvin*, No. 1:14-cv-29-JHR, 2015 WL 46062, at *2-*4 (D. Me. Jan. 2, 2015), for the proposition that, to the extent that the ALJ based her mental RFC assessment on the raw medical evidence instead of expert opinion, it is unsupported by substantial evidence. *See id*. at 14; *Bernier*, 2015 WL 46062, at *2 ("Unless the degree of limitation would be obvious to a layperson as a matter of common sense, an [ALJ] lacks the qualifications to determine RFC based on raw medical evidence and must rely on the findings of a medical expert.") (citation and internal quotation marks omitted). He contends that "it is unclear that the ALJ's RFC findings are based upon any medical opinion of record[.]" Statement of Errors at 12.

As the commissioner rejoins, *see* Opposition at 6-7, the ALJ's assessment plainly is supported by expert opinion of record, most importantly the December 11, 2014, mental RFC opinion of agency nonexamining consultant Lewis F. Lester, Ph.D., which the ALJ accorded "substantial weight[,]" Record at 17, 119-21.

Dr. Lester found that the plaintiff could "understand and remember simple tasks and procedures[,]" "be reliable and sustain 2-hour blocks at simple tasks at a consistent pace without

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). Nonetheless, I assess the supportability of the ALJ's decision based on the evidence available to her at that time.

significant interruption from mental symptoms over a normal work day/week[,]" could not "interact with the public due to his depression and associated situational mood i[]nstability, but he [could] interact with co-workers and supervisors in a normal work setting[,]" and could "adapt to routine changes, avoid common hazards, travel and make basic decisions." *Id*.

Consistent with that opinion, the ALJ determined that the plaintiff retained the RFC to "perform simple, routine tasks with normal work breaks over a normal workday" and could not "have any interaction with the general public." Finding 5, *id*. at 14.

The plaintiff nonetheless argues that the ALJ's mental RFC assessment is unsupported by substantial evidence because (i) she omitted Dr. Lester's finding that he could adapt to routine changes and avoid common hazards, and (ii) it is "unclear that the ability to 'perform simple, routine tasks with normal work breaks over a normal workday' found by the ALJ corresponds with the ability to 'sustain 2-hour blocks at simple tasks at a consistent pace' found by Dr. Lewis [sic]." Statement of Errors at 14 (quoting Record at 14, 120).

The plaintiff acknowledges that this court has held that a claimant "bears the burden of showing that an ALJ's error in interpreting raw medical evidence is not harmless" and "'may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support.'" *Id*. at 14-15 (quoting *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015)). He argues that the Lester opinion was more favorable than the ALJ's findings, "in particular due to the adaptation limitations found by Dr. Lewis [sic] that might reasonably be expected to preclude work in a meat processing plant." *Id*. at 15.

As the commissioner observes, *see* Opposition at 7-8, there is no clash between a finding of an ability to "be reliable and sustain 2-hour blocks at simple tasks at a consistent pace" and an ability to "perform simple, routine tasks with normal work breaks over a normal workday[,]"

10

Record at 14, 120. An ability to sustain two-hour blocks at simple tasks over a normal workday equates to an ability to sustain such tasks over a normal workday with normal work breaks. *See, e.g., MacDougall v. Astrue*, No. 2:10-cv-400-GZS, 2011 WL 4566268, at *8 (D. Me. Sept. 29, 2011) (rec. dec., *aff'd* Oct. 20, 2011).

As the commissioner argues, *see* Opposition at 8, to the extent that the ALJ erred in omitting to adopt Dr. Lester's findings that the plaintiff retained the ability to adapt to routine changes and avoid common hazards, the plaintiff fails to demonstrate harmful error, relying solely on speculation that the adoption of those limitations would have precluded his past relevant work as a meat processor, *see* Statement of Errors at 15.[4]

Remand, accordingly, is unwarranted on the basis of this point.

### 2. Asserted Failure To Incorporate Moderate Restrictions into RFC

The plaintiff further argues, in passing, that the ALJ erred in failing to incorporate the moderate restrictions that she found in activities of daily living, social functioning, and concentration, persistence, or pace into her RFC determination. *See* Statement of Errors at 12, 14 (citing *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527, at *6-*7 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010)). In *Staples*, this court observed that "mental RFC findings typically should reflect, and be consistent with, the degree of impairment found by way of use of a PRTF [psychiatric review technique form][,]" *Staples*, 2010 WL 2680527, at *6 (citation and internal quotation marks omitted). However, *Staples* is distinguishable because the ALJ in that

---

[4] At oral argument, the plaintiff's counsel pointed to the vocational expert's testimony at pages 63-66 of the record as establishing that the mental RFC errors of which he complains are not harmless, contending that additional mental limitations would have precluded the performance of his past relevant work. In what appears to be the only relevant portion of that passage, the ALJ asked the vocational expert whether, if a person had "moderately severe limitations in the ability to respond appropriately to supervisors and coworkers and to respond appropriately to customary work pressures," that would allow for his past relevant work. Record at 65. She explained that she defined "moderately severe" as "a limitation which seriously affects an individual's ability to function and results in unsatisfactory performance." *Id*. The vocational expert testified that those added restrictions would eliminate all work. *See id*. at 66. Yet, the plaintiff identifies no evidence that he had such restrictions.

11

case did not rely on a mental RFC opinion of an agency nonexamining expert who could be presumed to have taken into account moderate PRTF restrictions. *See id*. at *6-*7.

In any event, the plaintiff fails to identify specific limitations that he contends were not properly reflected in the ALJ's RFC finding or to demonstrate that their omission, if any, was harmful error. *See id*. at 12-15. Remand, accordingly, is unwarranted on the basis of this point.

### 3. Asserted Misinterpretation of GAF Scores

The ALJ stated that she was "aware that the medical record contains various GAF scores, some of which are indicative of 'serious' limitations." Record at 16 (citations omitted). Yet, she found that the record "fully support[ed] a conclusion that the [plaintiff] does not experience 'serious' occupationally relevant *functional limitations*, and on this basis the GAF ratings referenced here are considered, but not found to be persuasive of a disabling level of mental impairment." *Id*. at 17 (emphasis in original). She explained:

> [GAF] assessments are often (as on occasion in this case) the product of a one-time evaluation conducted specifically in connection with the claimant's disability claim. An Administrative Law Judge can choose to rely on [agency consultants'] reports factoring [in] a GAF opinion of a treating psychiatrist. *Cough v. Barnhart*, 2004 WL 390950 (D. Me. March 3, 2004) (No. 03-57-B-W). Moreover, the *definition* of GAF reveals that the rating can reference either symptoms OR (capitalization emphasis in original) a measure of functional limitation: A specific example of "serious symptoms" provided in the definition of GAF is illustrative: GAF 41-50 can be justified for a person who has "suicidal ideation" or who frequently engages in "shoplifting." Neither of these "symptoms" is particularly revealing of functional limitations, yet each justifies a GAF rating in the 41-50 range. In this case the [plaintiff's] relatively normal activities of daily living and other evidence is revealing of an ability . . . to do essentially that which he chooses to do (independently managing his personal grooming, caring for his cats and performing other household chores).

*Id*. at 16-17 (citation omitted) (emphasis in original).

The plaintiff points out that, in a treatment plan covering the period from March 2015 through September 2015, Jeannette Kassel, LCPC, assessed him with a GAF score of 43. *See*

Statement of Errors at 15; Record at 550-53. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34 (boldface omitted).

The plaintiff cites *Plourde v. Colvin*, No. 1:12-cv-194-JAW, 2013 WL 1345519, at *2-*6 (D. Me. Mar. 14, 2013) (rec. dec. *aff'd* April 2, 2013), for the proposition that this court has held that similar GAF scores constituted substantial evidence of a serious occupational impairment, sufficient to show harmful error, in the context of treatment subsequent to a claimant's attempted suicide and hospitalization. *See* Statement of Errors at 15. He asserts that the ALJ's reliance on *Cough* is misplaced in that the GAF scores assessed by Kassel were not part of the record when his case was reviewed by agency nonexamining consultants Brian Stahl, Ph.D., and Dr. Lester. *See id*. Finally, he argues that the only serious symptom underpinning his 2015 GAF scores that is not reflective of a serious occupational impairment is alcohol dependence; however, he testified credibly at hearing that he had remained largely abstinent from alcohol use throughout 2015. *See id*. (citing Record at 43-44, 550-53).

As the commissioner rejoins, *see* Opposition at 9, *Plourde* is distinguishable in that it pertained to an ALJ's finding, without benefit of expert opinion, that a claimant had no severe mental impairment following a suicide attempt, *see Plourde*, 2013 WL 1345519, at *4. In that context, the court noted that it could not fairly be said that the record made clear to a layperson, as a matter of common sense, that the claimant was restored to her baseline GAF score of 70, indicative of mild symptoms, when the record contained GAF scores of 45, indicative of serious symptoms. *See id*. at *5-*6.

While the Stahl and Lester opinions predated the Kassel record, *see* Record at 96, 121, undermining the ALJ's reliance on *Cough*, I find that her handling of the plaintiff's GAF scores passes muster. She acknowledged the lower scores, correctly observed that they do not necessarily reflect deficits in occupational functioning, and permissibly chose to rely on other evidence that she found more revealing of the plaintiff's functional capacity, including his activities of daily living. *See, e.g., LeBlanc v. Colvin*, No. 2:13-cv-348-JDL, 2014 WL 5431567, at *4 (D. Me. Oct. 24, 2014) ("[A] GAF score is nothing more than a snapshot of a particular moment.") (citation and internal quotation marks omitted); *LaFontaine v. Astrue*, No. 1:10-cv-527-JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011) (rec. dec., *aff'd* Oct. 13, 2011) ("A GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions.").[5]

Remand is not warranted on this basis.

### 4. Challenge to Credibility Determination

The plaintiff finally challenges the ALJ's determination of his credibility, contending that it fails to pass muster pursuant to Social Security Ruling 16-3p ("SSR 16-3p"), which took effect in March 2016, superseding Social Security Ruling 96-7p ("SSR 96-7p"). *See* Statement of Errors at 16-18. He argues, in the alternative, that, if SSR 96-7p applies, the credibility determination is flawed for the same reasons pursuant to that standard. *See id*. at 17-18.

Subsequent to the filing of the plaintiff's statement of errors, this court held that SSR 16-3p is not retroactive, *see Coskery v. Berryhill*, No. 1:16-cv-00477-NT, 2017 WL 2417847, at *2-

---

[5] I find nothing in the Kassel record indicating that Kassel's assessment of the plaintiff's GAF score was based almost entirely on occupational functioning deficits. The GAF score, set forth under Axis V of her DSM diagnosis, contains no explanation of its components. *See* Record at 550. While she did indicate in Axis IV that the plaintiff had severe occupational problems, she also indicated that he had severe problems related to the social environment and moderate problems with his primary group, moderate economic problems, moderate problems with access to health care services, and moderate problems related to interaction with the legal system. *See id*.

14

4 (D. Me. June 4, 2017) (rec. dec. *aff'd* July 7, 2017), and the plaintiff's counsel offered no reason at oral argument to revisit that ruling. Accordingly, SSR 96-7p, which applied as of the date of the ALJ's decision, December 29, 2015, *see* Record at 18, supplies the standard pursuant to which the supportability of the ALJ's credibility determination must be reviewed.

The ALJ deemed the plaintiff's allegations not credible to the extent inconsistent with her RFC finding, stating:

> The objective evidence falls short of demonstrating the existence of pain and limitations that are so severe that the [plaintiff] cannot perform any work on a regular and continuing basis. No treating doctor[] has opined the [plaintiff] is unable to perform the basic demands of competitive work. In fact, his primary care physician noted that the [plaintiff's] criminal record (i.e., felony record) makes finding work very difficult. As noted above, the [plaintiff's] primary care physician recommended the [plaintiff] get his driver's license back so that he could find employment.

*Id*. at 15. (citation omitted).

She explained that, while psychiatric treatment notes reflected ongoing complaints, mental status findings had "remained relatively benign," and "[m]uch of [the plaintiff's] depression and other mental health problems appear[ed] [to be] largely caused by situational stressors involving financial problems." *Id*. (citations omitted).

She further noted that she gave great weight to a March 6, 2008, opinion of agency examining consultant Mary Alice Burkhart, Ph.D., that, absent chronic alcohol use, the plaintiff "ha[d] the intellectual capacity to do work related activities as he ha[d] done[,]" and some weight to a June 26, 2014, opinion of agency examining consultant Patricia Kolosowski, Ph.D., that the plaintiff's "memory and understanding appeared to be adequate for some types of work[.]" *Id*. at 15-16 (quoting Record at 355, 508).

Finally, she acknowledged that the plaintiff's wife had testified that her husband did not have a long history of mental health treatment because his family did not encourage him to find

treatment and that, although he did not testify to it, he had had two prior suicide attempts. *See id.* at 15. She stated that she had considered the plaintiff's wife's testimony but found that it was "not corroborated by the objective medical evidence of record and therefore is accorded limited weight." *Id.* at 17.

The plaintiff complains that the ALJ discounted his testimony primarily on the basis that it was unsupported by objective medical evidence, in violation of SSR 96-7p's command that an individual's allegations "may not be disregarded solely because they are not substantiated by objective medical evidence." Statement of Errors at 17 (quoting SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 138). He asserts that her "limited" additional reasons for finding his testimony not fully credible are inadequate to support the credibility finding. *Id.* at 18.

Finally, he argues that the ALJ's reason for rejecting his wife's testimony is erroneous, pointing to evidence that he was admitted for inpatient treatment in October 2014 for major depressive disorder with intensifying suicidal ideation, including superficially cutting his wrist with a knife and verbalizing a plan to shoot himself with a gun hanging in the couple's living room. *See id.* (citing Record at 516-20).

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987). I find no reason to disturb that finding here.

As the commissioner argues, *see* Opposition at 13, the ALJ did not disregard the plaintiff's allegations solely on the basis that they were unsupported by objective medical evidence. She relied on the fact that no treating source had suggested that the plaintiff could not work and, to the

contrary, his own treating physician had indicated that he was capable of working. *See* Record at 15. The plaintiff offers no explanation, and it is not otherwise apparent, why these additional reasons are too "limited" and inadequate, combined with the lack of objective medical evidence, to support the ALJ's credibility finding.

Nor do I find harmful error in the ALJ's handling of the plaintiff's wife's testimony. First, as the commissioner argues, *see* Opposition at 15, the ALJ reasonably deemed the plaintiff's wife's testimony inconsistent with the objective evidence of record as a whole. Second, even as to the records on which the plaintiff's relies, it is not apparent that superficial cutting of one's wrist and verbalization of a plan to commit suicide constitute suicide attempts. *See* Record at 518 (plaintiff was "admitted due to suicidal ideations and self-injurious behaviors[,]" with a chief complaint of suicidal ideations). Finally, the plaintiff neither explains why crediting his wife's testimony regarding his suicide attempts would make an outcome-determinative difference nor cites authority for the proposition that error with respect to a third-party statement warrants remand. Indeed, this court has rebuffed a claimant's argument that 20 C.F.R. § 404.1529(c)(3) requires express discussion, as opposed to solely consideration, of third-party statements. *See Mathieu v. Colvin*, No: 1:13-cv-239-JDL, 2014 WL 4055515, at *5 (D. Me. Aug. 15, 2014).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

17

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 1st day of October, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge